**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ESTATE OF DANNY WAYNE BOYD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| BNSF RAILWAY COMPANY f/k/a ) | |
| BURLINGTON NORTHERN and ) | |
| SANTA FE RAILWAY COMPANY, and ) | Case No. 05-CV-247-TCK-PJC |
| PAUL A. PETTY, ) | |
| ) | |
| Defendants. ) | |

**AMENDED ORDER**[1]

Before the Court is Plaintiff's Motion to Remand (Docket No. 12); Plaintiff's Motion for Order of Dismissal Without Prejudice (Docket No. 11); Plaintiff's Motion to Strike Defendant's Reply Brief (Docket No. 28); and Defendant's Motion for Summary Judgment (Docket No. 7).

**I.     Factual Background**

Plaintiff in this case is the estate of Danny Wayne Boyd ("Boyd"). Boyd was a resident of Oklahoma. On October 26, 2002, Boyd was killed when his vehicle collided into a freight train owned and operated by Defendant BNSF Railway Company, formerly known as Burlington Northern and Santa Fe Railway Company ("BNSF"). BNSF is a Delaware corporation with its principal place of business in Texas. Defendant Paul Petty ("Petty") was the Engineer of the train when the accident occurred. Petty is a resident of Oklahoma. The accident occurred at a railroad

---

[1] The Court's Order of March 23, 2006 (Docket No. 46), is amended to reflect the Plaintiff's statement that he did not intend to dispute what the Court determined to be the operative fact in this case and to reflect that Defendant's motion for summary judgment is no longer held in abeyance but is instead granted. In other respects, the Order is identical to that initially entered on March 23, 2006.

1

crossing located in Creek County, Oklahoma.

On October 22, 2004, Plaintiff filed a Petition in the District Court for Creek County, Drumright Division, alleging causes of action against BNSF and Petty. On April 22, 2005, Plaintiff's time expired for effectuating service of process on Defendant Petty. Shortly thereafter, on May 6, 2005, BNSF removed the case to federal court on grounds of diversity of citizenship, alleging that Plaintiff and the only served Defendant, BNSF, were of diverse citizenship. Plaintiff does not dispute that the amount in controversy exceeds the jurisdictional limit or that BNSF's removal was timely pursuant to 28 U.S.C. § 1446(b).[2]

On July 14, 2005, BNSF moved for summary judgment on grounds that Plaintiff's claims were barred by the "occupied crossing rule" under Oklahoma law. On July 25, 2005, BNSF filed its portion of the Joint Status Report ordered by the Court, noting that Plaintiff had failed to cooperate in providing its portion of the Joint Status Report. On July 28, 2005, new counsel for Plaintiff entered an appearance and filed a motion to remand and an alternative motion to dismiss pursuant to Federal Rule of Civil Procedure 41(a)(2).

**II.   Plaintiff's Motion to Remand**

In its Notice of Removal, BNSF contends that complete diversity of citizenship exists because Petty, the only Defendant that destroys diversity, was not served within the 180-day time limit under Oklahoma law. *See* OKLA. STAT. tit. 12 § 2004(I). It is undisputed that Petty was not served with process at the time of removal and that Petty has not been served with process at any

---

[2] Plaintiff, in fact, could not raise untimeliness of BNSF's removal because motions to remand based on jurisdictional defects must be made within thirty days of removal. *See* 28 U.S.C. § 1447(c); *see also Russell Petroleum Corp. v. Environ Products*, 333 F. Supp. 2d 1228, 1233 (M.D. Ala. 2004). Plaintiff's motion to remand was made outside the thirty-day time limit.

point in time during this litigation.³ Plaintiff argues that this fact is irrelevant because Petty had not been formally dismissed by order of the state court and technically remains a party to the lawsuit. Therefore, Plaintiff argues, this Court must consider the citizenship of Petty for diversity purposes, despite the fact that it has been over sixteen months since the case was filed and Plaintiff has not shown that Petty was ever served with process. Plaintiff further argues that Petty's citizenship must be considered because Oklahoma law allows exceptions to the deadline for service of process where a plaintiff can show "good cause for the delay." *See Fischer v. Baptist Health Care of Oklahoma*, 14 P.3d 1292, 1293 (Okla. 2000).

As a general rule, "[t]he law is clear that the citizenship of all named defendants, whether served with process or not, must be considered in determining whether complete diversity exists thereby providing a jurisdictional basis for removal under 28 U.S.C. § 1441(a)." *Ott v. Consolidated Freightways Corp. of Delaware*, 213 F. Supp. 2d 662, 663-64 (S.D. Miss. 2002) (citing cases and explaining that rule originated in Supreme Court case of *Pullman Co. v. Jenkins*, 305 U.S. 534, 541 (1939)). Also as a general rule, "[a] party whose presence in the action would destroy diversity must be dropped formally as a matter of record to permit removal to federal court" and "[i]t is insufficient, for example, that service of process simply has not been made on a nondiverse party." 14B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3723 & n.23 (3d ed. 1998) (citing numerous cases).⁴

---

³ Plaintiff states in his motion to remand that there is nothing in BNSF's removal papers to prove that Petty was not served. However, Plaintiff does not argue that he has actually been served and has not submitted any evidence of service. The Court has no reason to believe that Petty was ever served with process or waived service of process.

⁴ Most courts have adhered to this general rule for determining whether diversity jurisdiction exists under 28 U.S.C. § 1441(a), despite the language in 28 U.S.C. § 1441(b)

In a typical case applying the above-described rule, the non-diverse party has not been served with process but the plaintiff is not out of time to effectuate service. Here, Defendant Petty had not been formally "dismissed" from the state-court case, but the time limit to serve Petty had expired at the time of removal and Plaintiff had made no efforts to serve Petty at the time of removal.[5] Neither party cited any case law directly applicable to this situation, and the Court has found only a few cases addressing whether the expiration of a time limit for service of process may function as an effective dismissal of a non-diverse defendant, such that complete diversity existed among the parties at the time of removal.

In *Alphonse v. Omni Hotels Mgmt. Corp.*, 757 F. Supp. 722, 724 (E.D. La. 1991),[6] the court addressed a motion to remand. The plaintiff argued that diversity did not exist at the time of defendant's filing of the notice of removal because there still existed a named but unserved non-

---

providing that diversity cases shall be removable "only if none of the parties properly joined *and served* as defendants is a citizen of the state in which such action is brought," which implies that a resident defendant who has not been served may be ignored in determining removability. *See* 14B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3723 (noting potential conflict between rules surrounding 28 U.S.C. § 1441(a) and precise language in § 1441(b) and explaining that the difference between the two is "unfortunate" and can be justified "only in terms of the nondiverse party's presence being viewed as a more fundamental defect for purposes of determining removal based on diversity of citizenship jurisdiction than is the presence of a local defendant in violation of Section 1441(b) for purposes of determining the applicability of that statute"); *see also Ott*, 213 F. Supp. 2d at 665 (explaining that § 1441(b) relates to narrower question of whether case is removable rather than the broader question of whether diversity exists). However, based on this ambiguity, there is a line of cases holding that the language of § 1441(b) must be strictly construed and that the court must only consider the citizenship of those defendants that have been "joined and served." *See, e.g., Mask v. Chrysler Corp.*, 825 F. Supp. 285, 289 (N.D. Ala. 1993) (listing conflicting cases). In absence of controlling Tenth Circuit precedent, the Court follows what it perceives to be the majority rule.

[5] There is no indication that Petty is difficult to locate or that he has avoided service. In fact, Petty's deposition was taken on October 19, 2005.

[6] This case has been overruled in part on other grounds. *See Seal v. Gateway Co., Inc.*, No. 01-1322, 2002 WL 10456 at * 6 n.21 (E.D. La. 2002).

4

diverse defendant. The court accepted the argument, remanded the case, and held that removal was improper because, at the time of removal, the plaintiff was "actively pursuing service" on the non-diverse defendant. *Id.* The court relied on the general rule, explained above, but made a point to distinguish these cases in which "the plaintiff has acted in such a manner as to indicate no intention of proceeding against these non-diverse parties." *Id.* The court found, in contrast, that the "plaintiff's activity to institute service placed in question the removability of the case." *Id. See also Morgan v. Cook*, 180 F. Supp. 2d 1301, 1304 (M.D. Ala. 2001) (finding that defendant may be disregarded for diversity purposes only when evidence shows that plaintiff did not intend to effect service and will not be removed where plaintiff had taken steps to effectuate service at time of removal). *Cf. Morton v. Meagher*, 171 F. Supp.2d 611, 613-14 (E.D. Va. 2001) (holding that dismissal of unserved defendant was proper because "[i]t is contrary to the doctrines of comity and federalism to allow a case that would be dead under state law to be revived upon removal by a federal court applying the same state law that would have led to termination of the case in the state court"); *Rawlings v. Prater*, 981 F. Supp. 988, 990 (S.D. Miss. 1997) (holding that plaintiff had voluntarily abandoned her claim against defendant, despite a formal court order of dismissal, based on execution of settlement and agreed judgment against that defendant prior to removal).

Other instructive cases arose in the context of a motion to remand based on untimeliness. In these cases, the *plaintiff* argued that its failure to serve process constituted a voluntary act showing removability in an attempt to show that defendant's removal was untimely because it was not made within thirty days of the first event triggering removability. In *Silverman & Associates v. Drai*, 659 F. Supp. 741, 745 (C.D. Calif. 1987), a plaintiff had failed to effect service on three fictitious defendants within the time frame allowed by California law. At a point in time after the

expiration of the time period, but not within thirty days after, the defendant removed to federal court. In addressing whether the defendant's removal was timely under 28 U.S.C. § 1446(b), the court held that, in order for removal to be proper where removal takes place *before* the time for service has expired, a plaintiff must have taken affirmative action prior to removal to provide "bright line" notice that the claims against any unserved defendants had actually been dropped. *Id.* at 745 n.7. In contrast, where removal takes place *after* the time for service has elapsed, a plaintiff is precluded from proceeding against those plaintiffs by operation of law. *Id.* The court held that the defendant was therefore on notice that the unserved defendants were no longer part of the action. *Id.* Like the plaintiff in this case, the defendant in *Silverman* argued that California allowed exceptions to the time limit for service and that defendant was therefore not on unequivocal notice that other defendants would not remain in the case. The court rejected this argument, noting that none of the exceptions were applicable in that case. *Id.* at 745 n.6. Thus, the court held that defendant's removal was untimely. *But see Jones v. Hartford Ins.*, 347 F. Supp. 2d 328, 332 (S.D. Miss. 2004) (reaching contrary result and rejecting plaintiff's argument that the necessary "voluntary act" giving the defendant notice of removability was his decision to allow the statute of limitations to expire).

In this case, the time period for service on Petty had expired when the case was removed. Plaintiff has offered no explanation for this lack of service and has offered no indication or evidence that he was in the process of effecting service, that he ever intended to effect service, or that he had a good-faith reason for the delay in effecting service that would entitle him to the "good-faith" exception under Oklahoma law.[7]  Accordingly, the Court concludes that Plaintiff's failure to

---

[7] Although the Court relies only on the facts as they existed at the time of removal, the Court's conclusion is bolstered by the fact that service upon Petty has still not been accomplished and Plaintiff has not moved for relief from the 180-day time limit for service.

effectuate timely service or to take any steps toward effectuating service indicated Plaintiff's intent to abandon his claim against Petty, thereby rendering the case against Petty effectively dismissed upon removal to this Court. The Court further concludes that this failure to effectuate timely service constituted a "voluntary act" by Plaintiff that put BNSF on notice that removal was proper. *See Greco v. Beccia*, No, 99-CV-2136, 2001 WL 121887, at *2 (M.D. Pa. 2001) (explaining that removal is proper, even if diversity did not exist at commencement of suit, where non-diverse defendant is dismissed from the case by voluntary act of plaintiff rather than involuntary act of court or opposing counsel).

The Court's conclusion in this case does not preclude a different outcome where a plaintiff makes a showing, or even attempts to show, that he was in the process of serving the non-diverse party, that he intended to serve the non-diverse party at a future date, or that he had a good-faith reason for the failure to serve the non-diverse party either at the time of removal or as part of the evidence attached to the motion to remand. Under the facts presented here, however, the Court is satisfied that Plaintiff has effectively abandoned his claims against Petty and that removal was proper. In effect, it was clear upon removal, as it is clear now, that the case against Petty is "dead" due to lack of service of process. The principles of comity and federalism would not be served by remanding a case based on the diversity of Defendant Petty. Based on the diversity of Plaintiff and BNSF and the existence of the necessary amount in controversy, Plaintiff's Motion to Remand is denied.[8]

---

[8] Alternatively, and to the extent necessary, the Court follows the minority view and determines that remand is not proper based on the plain language of 28 U.S.C. §1441(b) because Petty was not a "joined and served" party at the time of removal. Based on these conclusions, the Court does not reach the question of whether Petty was fraudulently joined, which would provide an additional basis for ignoring the citizenship of Petty for diversity purposes.

### III.     Plaintiff's Motion to Dismiss

In the event the motion to remand is denied, Plaintiff moves the Court to dismiss the case without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2), which provides that, except where a defendant has failed to answer or a defendant stipulates to dismissal, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." FED. R. CIV. P. 41(a)(2).

"Dismissal under Rule 41(a)(2) is within the sound discretion of the court." *See Clark v. Tansey*, 13 F.3d 1407, 1411 (10th Cir. 1993). The rule is designed to prevent voluntary dismissals that unfairly prejudice the other side, and the most important consideration under the analysis is whether the opposing party will suffer prejudice. *Id.* In determining whether the opposing party will suffer "legal prejudice," the court should consider three factors: (1) the opposing party's effort and expense of preparation for trial, (2) excessive delay and lack of diligence on the part of the movant in prosecuting the action, and (3) insufficient explanation for the need to take a dismissal. *Id.*

The Court finds that the second and third factors weigh strongly against dismissal in this case. Plaintiff has given the Court no explanation whatsoever for the need to take a dismissal except that it desires to continue the case in state court. However, Plaintiff does not explain why, upon this Court's dismissal and the subsequent refiling of the case in state court, the case would not again be subject to removal by BNSF. Plaintiff had the opportunity to serve a defendant that would have destroyed diversity jurisdiction but failed to do so in the proper time, continues to have failed to do so to this date, and has offered the Court no explanation for this failure. Under these circumstances, Plaintiff's "choice of forum" is entitled to little weight because the Court has no reason to believe

that Petty would be served or that the case would not again be subject to removal upon dismissal and refiling. Further, Plaintiff's lack of diligence in serving Petty allowed the removal of the action in the first place. This would be a more difficult case if Petty had actually been served post-removal, and Plaintiff argued that the delay in service was based on a good-faith reason that would qualify for the exception. As it stands, Plaintiff has offered the Court an insufficient explanation for the need to take a dismissal and refile his case in state court. Nothing would be accomplished by dismissal except a further delay of these proceedings, which, as explained below, are ripe for disposition on the merits.

### IV.    Motion for Summary Judgment

#### A.    The Occupied Crossing Rule

Oklahoma has adopted a common-law doctrine known as the "occupied crossing rule." This rule states:

> Ordinarily, the presence of a train or railway cars on a crossing, whether moving or stationary, is sufficient notice to a driver of a vehicle, on the highway of such obstruction and, in the absence of unusual circumstances, the operating railway company is not under any duty to provide any other notice or warning.

*Hurst v. Union Pacific Railroad*, 958 F.2d 1002, 1004 (10th Cir. 1992) (citing *Davis v. Burlington Northern, Inc.*, 663 F.2d 1028, 1031 (10th cir. 1981)). The Tenth Circuit has characterized the Oklahoma rule as a "legal dinosaur [that] tramples twentieth century negligence law and then lumbers back to its dark cave only to await another victim." *Id.* at 1002. Nonetheless, "absent any contra-indication from the Oklahoma Supreme Court, the dinosaur prevails." *Id.* BNSF has asserted the "occupied crossing rule" as a complete defense to the claims asserted in this case.

Although the occupied crossing rule creates an exception for "unusual circumstances," there is no Oklahoma case holding that unusual circumstances were present to remove the rule's absolute

9

bar to railroad liability. *See id.* at 1004. For example, courts have held that the following did not qualify as unusual circumstances: (1) inclement weather such as mist, rain, and heavy fog; (2) overgrown vegetation or other obstacles obscuring the crossing; (3) the absence of a warning sign or "crossbuck"; (4) darkness; (5) a driver's ignorance of the existence of the railroad crossing; and (6) the presence of a flatcar whose bed stood only three feet above the track coupled with the lack of any lighting at the crossing. *See id.* at 1004-05. "Each of these cases illustrate not simply that no circumstance yet constitutes an unusual circumstance, but also that the presence in and of itself of a train at a crossing regardless of the conditions surrounding that presence is legal notice." *Id.* at 1005. Thus, the Tenth Circuit has stated the following regarding the "unusual circumstances" exception to the occupied crossing rule:

> [I]n the summary judgment context, the application of the occupied crossing rule transforms the determination of whether certain circumstances are unusual, a question of fact, into a question of law for the court alone to resolve. To date, no factual showing has overcome this legal threshold. Consequently, [the defendant] has no burden of production other than to state a train occupied the crossing.

*Id.* at 1006-07.

### B. Plaintiff's Substantive Argument Regarding the "Unusual Circumstances" Exception

In this case, there appears to be no genuine dispute that the train with which Mr. Boyd collided was stopped on the tracks and therefore "occupied the crossing" at the time of the collision. (*See* Petty Dep. at 13:4-14:25, Ex. 2 to Def.'s Reply to Plf.'s Objection to Def.'s M. for Summ. J.; *see also* Franklin Aff. ¶ 4, Ex. 1 to Def.'s Reply to Plf.'s Objection to Def.'s M. for Summ. J.)[9]

---

[9] Plaintiff has raised evidentiary arguments regarding the admissibility of Plaintiff's evidence supporting these facts, which are discussed below. However, Plaintiff has not disputed these facts with contrary evidence.

There is no dispute that the crossing was equipped with warning signs and signals. There is, however, a disputed issue of fact as to whether the flashing lights on both sides of the crossing were *in use* at the time of the collision. The first witness upon the scene of the accident, Travis Worrall, testified that he came over the hill immediately following the collision and that the lights were not in use. (*See* Worall Dep. at 4-6, Ex. A to Plf.'s Obj. to Def.'s M. for Summ J.) Thus, Plaintiff's substantive argument to defeat summary judgment is that where a railroad company undertakes to install and use signal lights as a means to warn the public of danger, the malfunctioning of these lights constitutes an "unusual circumstance" that defeats the occupied crossing defense. In support of this argument, Plaintiff cites decisions from Alabama, Indiana, and Missouri, the latest of which was issued in 1965. These cases stand for the general proposition that "if a railroad company has placed a . . . automatic device at a crossing, and has so long maintained the same to warn travelers of the approach of trains . . . the failure of the company to operate . . . the automatic device would not wholly excuse the traveler . . . . [but would] have the effect . . . to invoke the presumption that such traveler was in the exercise of reasonable care." *Wojciechowski v. Louisville and Nashville RR Co.*, 173 So. 2d 72 (Ala. 1965).

For purposes of summary judgment, the Court accepts Plaintiff's assertion that the signal lights were installed but were not functioning at the time of the collision. However, as stated by the Tenth Circuit, a defendant's only burden of production under Oklahoma law is to show that a train occupied the crossing. *Hurst*, 958 F.2d at 1007. Plaintiff's cited cases are simply unpersuasive because Oklahoma law has been interpreted to permit railroad companies an absolute defense to liability where the train occupied the crossing. *Id.* Further, even considering Plaintiff's cited cases, the Court is unable to conclude that malfunctioning signal lights would be considered an unusual

circumstance. As explained above, a defendant railroad company was not held liable where the defendant had abandoned the track for a period of time, allowed brush and weeds to obscure the existence of the track, reopened the track, and then parked a train on the tracks in a manner that blocked plaintiff's view of the "crossbuck" warning sign. *See Hurst*, 958 F.2d at 1005 (citing unpublished Order in *Harris v. Missouri-Kansas-Texas R.R. Co.*, No. 83-2610-R (W.D. Okla. June 18, 1984)); *see also Deaver v. Missouri Pacific R.R. Co.*, No. 91-5115, 1992 WL 132440 at *6 (10th Cir. June 16, 1992) (following decision in *Hurst* and holding that no unusual circumstances were present where crossing had been abandoned for five years, one of the train's engines did not have a properly working headlight, and the switching operation did not require that the crossing be blocked). These cases present similar, if not more severe, allegations of negligence by the defendant in failing to maintain the tracks in a safe manner and/or failing to maintain warning signs in a safe manner. Accordingly, the Court rejects Plaintiff's invocation of the "unusual circumstances" exception to the occupied crossing rule as a matter of law.

### C.  Plaintiff's Evidentiary Argument to Defeat Summary Judgment

The Court has rejected Plaintiff's substantive argument and concluded that BNSF must only prove that the train occupied the crossing in order to be granted summary judgment. To prove this fact, BNSF initially attached the "Official Oklahoma Traffic Collision Report," which states that "Unit 1 (freight train) was stopped to turn switch on tracks." (*See* Mot. for Summ. J. at Ex. 2.) Plaintiff correctly argued, however, that such report is inadmissible hearsay and may not be considered by the Court for summary judgment purposes. *See* OKLA. STAT. tit. 47, § 10-115 (collision reports shall not be used as evidence in any trial arising out of a collision); OKLA. STAT. tit. 12, § 2803(8)(a) (investigative reports by police and other law enforcement personnel are not

within public records exception to hearsay rule); *Okla. Dep't of Public Safety v. Robinson*, 512 P.2d 128 (Okla. 1973) (report of a highway patrolman is not admissible in evidence because hearsay evidence is incorporated into report); *see also Adams v. American Guaranty Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (district court may only consider admissible evidence in consideration of motion for summary judgment). Recognizing this problem, BNSF attached to its reply brief the affidavit of John Franklin, who is a claims representative for BNSF, and the deposition of Petty, which was taken by Plaintiff after BNSF filed its motion for summary judgment. Both pieces of evidence state the train occupied the crossing at the relevant time. Plaintiff filed a motion to strike the reply brief and the evidentiary support therein because it raised "new matter," in violation of the local rules of this Court.

Plaintiff urged the Court, as BNSF's penalty for failing to properly present evidence in its initial motion, to allow the case to go to trial. However, the Court concluded that allowing the case to go to trial was not in the interest of judicial economy because the fact of the occupied crossing appeared to be undisputed. In the interest of fairness, however, the Court allowed Plaintiff to file a statement of whether he intended to dispute this fact. (*See* Docket No. 46, at 13.) On March 28, 2006, Plaintiff complied with the Court's Order and filed a statement that he did not intend to dispute the fact that the train occupied the crossing. (*See* Docket No. 47.) The Court therefore finds that such fact is now before the Court in the form of admissible evidence attached to Defendant's reply brief and that such fact is undisputed by Plaintiff. For the reasons explained in detail above, the occupied crossing rule bars Plaintiff's claims in this case as a matter of law, and summary judgment for defendant must be entered.

**V.     Conclusion**

Plaintiff's Motion to Remand (Docket No. 12) is DENIED; Plaintiff's Motion for Order of Dismissal Without Prejudice (Docket No. 11) is DENIED; Plaintiff's Motion to Strike Defendant's Reply Brief (Docket No. 28) is DENIED; Defendant's Motion for Summary Judgment (Docket No. 7) is GRANTED; and Defendant BNSF's Motion to Move Pretrial (Docket No. 48) is DENIED AS MOOT.

ORDERED this 29th day of March, 2006.

*Terence Kern*

**TERENCE  KERN**
**UNITED STATES DISTRICT JUDGE**